IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Criminal No. 03-40019-JPG |
| ) | |
| ROBERT R. BANKS, ) | |
| ) | |
| Defendant. ) | |

**PROSECUTION VERSION OF OFFENSE**

Defendant has pled guilty to: conspiracy to distribute cocaine [Count 2]; distribution of marihuana [Count 4]; and distribution of cocaine [Counts 5 and 6]. The cocaine conspiracy occurred "from in or about September, 1998, to on or about February 22, 2003." The marihuana distribution occurred "on or about February 1, 2001." The cocaine distributions occurred "on or about February 17, 2003," and "on or about February 22, 2003." The offenses occurred in Williamson and Jackson Counties.

The evidence in this case establishes that from at least 1998, through February 22, 2003, defendant was involved with others in the distribution and use of cocaine, crack cocaine, and marihuana. Defendant was obtaining the marihuana, cocaine, and crack cocaine in the Chicago area. Defendant transported the illegal drugs to southern Illinois, where the drugs were distributed and used. On trips where defendant obtained only marihuana and cocaine in Chicago, some of the cocaine would be cooked into crack cocaine for use and distribution.

Beginning in at least 1998, defendant, who was in his mid to late forties at the time, recruited young teenage females to assist him in his drug distribution. Defendant would bring the drugs to his Carbondale residence. At defendant's Carbondale residence, defendant would provide the young females with drugs for their own use. Defendant also provided the girls with

money.  The girls, who sometimes accompanied defendant to the Chicago area to get the drugs, would assist defendant in the cooking, packaging and distribution of the drugs.  Some of the teenage girls became addicted to the drugs, and they would then have to continue to assist the defendant in his drug distribution, as a means of supplying their own drug habit.  Some of the teenage girls that defendant recruited to assist him in his drug dealing included:  Jeannie Longwell, Kim Busing, Rachel Dailey, and Tressa Caudle.  Defendant provided all four of these teenage girls with drugs to use.  Defendant also provided drugs to Longwell, Busing, and Caudle to distribute to others.  All four of these teenage girls assisted defendant in his drug distribution.  While they were not teenagers at the time, defendant also provided drugs to Tracey Qualls, Shelly Kelly, and Paula Nelson, who, in turn, assisted defendant in his drug distribution.

Defendant was transporting and distributing all three of the illegal drugs at the same time.  Defendant pled guilty to marihuana and cocaine offenses.  While defendant did not plead guilty to the crack cocaine conspiracy count, the cocaine and crack cocaine conspiracies involved the same drugs.  That is, if defendant returned with crack cocaine and cocaine, he would use and distribute both drugs.  If, however, defendant obtained only powder cocaine on a particular trip, then some of the powder cocaine would have to be cooked into crack cocaine for defendant's use and distribution.  Finally, there were some trips were defendant was not able to obtain any powder cocaine, so he would obtain only crack cocaine on that particular trip.

The previously mentioned girls had both cocaine and crack cocaine involvement with defendant.  Jeannie Longwell was 18 years-old in 1998 when she first became involved with defendant.  Defendant told her that his eyesight was bad and that he needed someone to drive him to Chicago.  Even though defendant did the driving, he paid Long well $100 every time that she traveled to Chicago with him.  Longwell made trips to Chicago with defendant twice a week.  In

Chicago, Longwell was aware that defendant was obtaining 2-10 pounds of marihuana and 1/2 - 2 ounces of cocaine. According to Longwell, if defendant couldn't get powder cocaine, he would get crack cocaine. Longwell taught defendant how to cook the powder cocaine into crack. When defendant would return to his Carbondale residence, either he or Longwell would cook some of the powder cocaine into crack cocaine. Longwell assisted defendant with breaking-up, packaging and distributing the drugs. Besides getting drugs from defendant for her own personal use, Longwell would obtain drugs from defendant for distribution in DuQuoin.

Once Longwell introduced defendant to Kim Busing, Longwell's best friend, Busing became involved in defendant's drug distribution. According to Busing, she had just turned 17 years-old when she first met defendant. The first time that she met defendant, he offered her crack cocaine to smoke. Thereafter, Busing assisted defendant in the drug distribution. Defendant would let Busing use unlimited drugs at his residence and defendant would front Busing a lot of drugs to sell. Generally, defendant would front Busing: 1) 3 8-balls of crack cocaine; 2) 3 8-balls of powder cocaine; and 3) 1 ounce of marihuana. After selling these drugs, Busing would have to pay defendant back $1200. According to Busing, she got addicted to the drugs and was not making any money. Rather, she would have to keep selling drugs for defendant, so that she could continue to use his drugs. According to Busing, defendant was making the Chicago drug trips twice a week and sometimes as often as 3-4 times a week. Defendant would return from the trips with: 1 kilogram of crack cocaine; 1 kilogram of powder cocaine; and "big chunks" of marihuana. Initially, defendant would get both powder cocaine and crack cocaine on the trips. After awhile, defendant would get more powder cocaine and would have Busing cook the powder cocaine into crack cocaine. Busing was aware that on defendant's last trip to Chicago [prior to defendant and Busing's falling-out in late September 1998], defendant did not obtain any

3

crack cocaine, but did obtain double the amount of powder cocaine [2 kilograms]. Defendant had Busing cook the powder into crack cocaine. [2 kilograms].

In September 1998, a confidential source provided information to agents about drugs present at defendant's residence.[1] On September 30, 1998, agents executed a search warrant at defendant's residence. During that search, agents located: over **300 grams** of marihuana; packaging materials, paraphernalia for using marihuana and crack cocaine, over $3700.00 U.S. currency, and cocaine residue. Rachel Dailey, who was 19 years-old, was present at defendant's residence at the time of the search. Dailey admitted that defendant gave her drugs and that she assisted defendant in his drug distribution. Dailey also admitted that she was present on multiple occasions when defendant gave drugs to 17 year-old Busing for Busing to distribute.

Tressa Caudle was 19 years-old when she became involved with defendant. She made numerous trips to Chicago with defendant. According to Caudle, she was aware that defendant sometimes obtained ten 20 pound bricks of marihuana in Chicago. [20 pounds x 10 = 200 pounds x 2 trips [minimum] = 400 pounds (181.8 kilograms)]. According to Caudle, defendant most often distributed the marihuana in one pound amounts. Regarding cocaine and crack cocaine, during the period when Caudle was with defendant, the amount of cocaine and crack cocaine that defendant obtained varied. According to Caudle, defendant was oftentimes obtaining kilogram amounts of cocaine and 3-4 ounces of crack cocaine. Caudle often cooked the powder cocaine into crack for defendant. Caudle cooked 2-3 ounces of powder 1-2 times a week for defendant. Some of the crack cocaine would be used by defendant and Caudle and some would be distributed

---

[1] The confidential source was Busing's boyfriend.

by defendant and Caudle. Crack cocaine was defendant's drug of choice and Caudle got addicted to crack cocaine while she was involved with defendant.

Caudle later introduced her friend, Tracey Qualls, to defendant. Defendant provided Qualls with drugs and Qualls made multiple crack cocaine deliveries for defendant.

In late 1999 through early 2000, defendant began paying Shelly Kelley to . Kelley observed drugs at defendant's residence. Kelley often observed "softball" size amounts of crack cocaine and cocaine at defendant's residence. Defendant kept his marihuana in gallon size ziplock bags. Defendant did not hide his drug dealing and Kelley observed defendant distribute drugs often. Defendant gave Kelley a lot of money and provided her with unlimited marihuana. Defendant tried to get Kelley to do crack cocaine with him, but she refused.

From 1998 through February 2001, defendant was providing Brian Cathcart with marihuana. Over the three-year period leading up to February 1, 2001, [Count 4], Cathcart was obtaining 2 pounds of marihuana a week from defendant. [2 pounds x 52 weeks x 3 years = 312 pounds (141.8 kilograms)]. When Cathcart was arrested with marihuana at the end of January 2001, Cathcart told agents about the 2 pound amounts of marihuana that he was getting from defendant. Cathcart immediately agreed to assist police. On February 1, 2001, Cathcart placed a recorded telephone call to defendant and ordered 2 pounds of marihuana. Cathcart then traveled to defendant's Carbondale residence and purchased 2 pounds of marihuana from defendant. [869.9 grams] [Count 4]. After the controlled buy, agents executed a search warrant at defendant's residence. During the search, agents located: 358.2 grams of marihuana, 2 grams of crack cocaine; LSD, scales, $6,666.00 in U.S. currency, including $190.00 pre-recorded money that Cathcart had used.. Upon defendant's arrest, defendant admitted that the drugs found in the house were his and that they were for personal use or to share with friends when they would come over.

5

From at least 2000 through February 22, 2003, defendant had a drug association with Paula Nelson in Carterville, Illinois. On February 17, 2003, and February 22, 2003, a confidential source arranged to purchase cocaine from defendant through Nelson. On February 17, 2003, defendant sold 6.9 grams of cocaine to Nelson/CS. [Count 5]. On February 22, 2003, defendant sold 27.9 grams of cocaine to Nelson/CS. [Count 6]. After the February 22, 2003, drug delivery, defendant was arrested. Agents found $1280.00 of the pre-recorded buy money in defendant's jacket pocket.

According to Nelson, she had known defendant for a few years prior to his 2003 arrest and used to clean his house. While Nelson purchased drugs from defendant a couple of times, he usually gave her drugs to use. Defendant would be in possession of crack cocaine every time that Nelson saw him and defendant would bring out the crack cocaine and share it with her. According to Nelson, defendant preferred crack over powder and would usually cook his own crack cocaine. Nelson saw defendant cook crack cocaine at least 12 times and defendant had cooked crack at Nelson's residence. Once defendant cooked the powder into crack, he and Nelson would smoke it. Defendant told Nelson that the penalty for selling crack cocaine was stiffer than for selling powder cocaine.

## Statutory Sentencing Range

Defendant has a prior felony drug conviction. Prior to defendant's guilty plea, the Government filed a notice of enhancement pursuant to Title 21, United States Code, § 851. Based on the prior conviction, sentencing enhancements and relevant conduct, it is the Government's position that defendant's statutory sentencing range will be as follows:

Count 2 = 30 years' imprisonment; 6 years supervised release; $2,000,000 fine;

Count 4 = 10 years' imprisonment; 4 years supervised release; $500,000 fine;

Counts 5 and 6 =  30 years' imprisonment; 6 years supervised release; $2,000,000 fine

**Guidelines Calculations**

The Government believes that reliable information establishes that defendant's Offense Level is 39 based on: 1) the distribution of more than 30,000 kilograms of marihuana equivalents [including more than 1.5 kilograms of crack cocaine [§ 2D1.1; Level 38]; 2) a 2 point enhancement based on the presence of a firearm [§ 2D1.1(b)(1)]; 3) a 2 point enhancement based on defendant's use of a minor to commit an offense [§ 3B1.4]; and 4) a 3-point reduction for acceptance of responsibility [§ 3E1.1]. The Government believes that defendant has amassed 8 criminal history points and that he is a Criminal History Category IV.

**A. Relevant Conduct**

As set forth, supra, the Government believes that defendant's relevant conduct is based on his distribution of marihuana, cocaine, and crack cocaine. The Government believes that defendant's relevant conduct includes more than 1.5 kilograms of crack cocaine and that, therefore, his initial Offense Level is 38. [§ 2D1.1].

**B. § 2D1.1(b)(1) firearm enhancement**

Numerous witnesses have stated that defendant possessed a firearm during his drug trafficking. According to Tressa Caudle, defendant's house was broken into 3 times during the time that she was involved with him. Defendant was very paranoid, especially when he smoked crack cocaine. According to Caudle, defendant "kept guns everywhere" and defendant once stuck a gun to Caudle's head and threatened to blow her brains out.

Mike Yates had a long drug association with defendant and Yates was aware that defendant often carried guns. After defendant threatened Caudle with a gun, Caudle called Yates. When Yates went to defendant's Carbondale residence to pick Caudle up, he observed Caudle hiding

defendant's .9mm and .45 caliber handguns in the dryer. According to Yates, defendant pulled a gun on Yates 4-5 times.

According to Shian Cramner, everyone knew that defendant carried a handgun for protection and, according to Cramner, defendant carried a .38 caliber handgun and a Glock semi-automatic.

According to Tracy Qualls, who had cleaned defendant's house and had drug involvement with defendant during the summer of 1999, Qualls observed a gun in defendant's bedroom.

According to Shelly Kelley, who stayed at defendant's residence and had drug involvement with defendant during 1999-2000, defendant would keep guns strategically located in his house. Kelley, who cleaned house for defendant observed guns in the kitchen, the bathroom off of the kitchen, and the bedroom.

According to Donnett Turnquist, who obtained crack cocaine from defendant, Turnquist saw a .9 mm handgun at defendant's Carbondale residence.

Defendant's dealings with the Carbondale Police Department corroborate the numerous witness accounts that defendant kept firearms at his residence. On November 19, 1999, Carbondale police officers went to defendant's residence in an attempt to locate Tressa Caudle, who was wanted on a warrant. When officers entered defendant's residence, they observed a handgun, partially covered by a blanket, laying on a coffee table. The gun, which was loaded, was seized. Also, on July 21, 2001, defendant called the Carbondale Police Department and reported that his residence had been broken into. According to defendant, the only thing taken during the burglary was his nephew's Smith & Wesson handgun and ammunition.

**C. § 3B1.4 use of a minor to commit crime enhancement**

Under § 3B1.4, a defendant that uses or attempts to use of a person under 18 years-old to commit the offense warrants a 2 level increase. "Use or attempted to use" includes "directing, commanding, encouraging, intimidating, counseling, training, procuring, recruiting, or soliciting." There is no question that defendant "used" Kim Busing in his drug distribution. According to Busing, she met defendant approximate 1 month after turning 17. Busing made Chicago trips with defendant, assisted defendant in packaging and selling the drugs. Busing drove defendant to make drug deliveries and sold drugs for defendant. In September 1998, defendant and Busing had a falling out after he believed that she had stolen $5,000 from him. Defendant repeatedly threatened Busing and her family about the missing money.

        Respectfully submitted,

        RONALD J. TENPAS
        United States Attorney


        s/ AMANDA A. ROBERTSON
        Assistant United States Attorney
        402 West Main Street, Suite 2A
        Benton, IL 62812
        Phone: (618) 439-3808 Ext. 103
        Fax: (618) 439-2401
        E-mail: amanda.robertson@usdoj.gov

# Certificate of Service

I hereby certify that on January 4, 2005, I electronically filed **PROSECUTION VERSION OF OFFENSE** with the Clerk of Court using the CM/ECF system which will send notification of such filing(s) to the following:

Alok A. Kale
Humphrey, Siegler, et al.
1221 Locust Street Suite 504
St. Louis, MO 63103

and that I hand-delivered a copy to

Caleb Rath
U.S. Probation Office
402 West Main
Benton, IL 62812

    Respectfully submitted,

    RONALD J. TENPAS
    United States Attorney

    s/ AMANDA A. ROBERTSON
    Assistant United States Attorney
    402 West Main Street, Suite 2A
    Benton, IL 62812
    Phone: (618) 439-3808 Ext. 103
    Fax: (618) 439-2401
    E-mail: amanda.robertson@usdoj.gov