UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERCA,<br><br>    Plaintiff,<br><br>v.<br><br>ROBERT ROSS BANKS,<br><br>    Defendant. | Case No. 4:03-cr-40019-JPG |

**MEMORANDUM AND ORDER**

    This matter comes before the Court on a motion for compassionate release and a motion to dismiss said motion. (Docs. 187, 190). Finding that the Movant has failed to exhaust his administrative remedies, the Court **GRANTS** the Government's motion to dismiss and hereby **DENIES** Banks's motion for compassionate release.

**I.**    **INTRODUCTION**

    The movant, Robert Banks, filed his motion on April 9, 2024, and the motion to dismiss was filed by the Government on April 25, 2024. Banks petitioned the warden prior to filing. In that petition, he raised a variety of grounds for compassionate release. Primarily, he argued that his advanced age and changes in law that, Banks believes, were implemented to correct racial disparities in sentencing entitled him to compassionate release. The warden either denied or did not respond to the request. Banks filed the present motion shortly thereafter.

    In his present motion, Banks again argues that he qualifies for release on the basis of his age. Additionally, he points to purported changes in marijuana laws. In both the petition and the motion, Banks argues he qualifies for a reduction due to a change in law, however, Banks points to different changes in law—racial disparities in sentencing related to cocaine base in his petition

1

to the warden, versus changes in marijuana laws in his present motion. The Government argues that Banks has failed to exhaust because, while he submitted his request to the warden, he did not present the same grounds for compassionate release.

## II.     LEGAL STANDARD

The First Step Act expanded the sentence reduction provisions[1] of § 3582(c)(1)(A) by opening the door for a defendant to move for a reduction rather than only allowing the Director of the Bureau of Prisons ("BOP") to so move. First Step Act, § 603(b)(1) (codified at 18 U.S.C. § 3582(c)(1)(A)); *United States v. Gunn*, 980 F.3d 1178, 1179 (7th Cir. 2020). The relevant portion of the law provides:

> **(c) Modification of an imposed term of imprisonment.**—The court may not modify a term of imprisonment once it has been imposed except that—
> (1) in any case—
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
> (i) extraordinary and compelling reasons warrant such a reduction. . .
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission. . . .

18 U.S.C. § 3582(c)(1)(A). Therefore, prior to moving for compassionate release, a defendant must first exhaust administrative remedies. Exhaustion is a mandatory prerequisite, though it can

---

[1] The reduction provisions are often referred to as "compassionate release" because historically the grounds for reduction have included the defendant's health and/or age as "extraordinary and compelling reasons" for immediate release. Release was called "compassionate" because it was viewed as showing sympathy for an ailing or aged defendant.

be waived by the Government if it wishes. When the Government invokes the exhaustion requirement, a court must evaluate whether a movant truly exhausted their administrative remedies. Determining whether a request was made to the warden at all, or whether the movant waited for the required number of days is simple. However, there is another factor that a court must consider; in both his petition and his motion, a movant must have presented the same, specific issues and grounds for compassionate release. Raising new or different, specific issues or grounds for compassionate release in his motion versus his petition to the warden means that the movant has failed to exhaust.

The final clause of § 3582(c)(1)(A) requires the Court to consider whether a sentence reduction would be consistent with U.S.S.G. § 1B1.13 (2023) (effective Nov. 1, 2023), the policy statement applicable to motions filed by the BOP Director or the defendant. That policy statement adds the provision that the defendant must not be a danger to the safety of any other person or to the community. U.S.S.G. § 1B1.13(a)(2).[2]

The policy statement further defines "extraordinary and compelling reasons" to include, *inter alia*, cases where a defendant is of advanced age, is experiencing a "serious deterioration in physical and mental health" as a result of the aging process, and has served at least ten years, or seventy-five percent, of their sentence. Alternatively, a defendant can qualify for "extraordinary and compelling reasons" by demonstrating they qualify for a reduction based on an "unusually long sentence," (hereinafter "ULS"). The movant bears the burden of making such a showing, and the Court has discretion to determine whether the defendant satisfied their burden.

Under Amendment 814, defendants may move for compassionate release if they are serving an "unusually long sentence.":

---

[2] This provision is similar, but not identical, to 18 U.S.C. § 3553(a)(2)(C), which requires the Court to consider the need for the sentence "to protect the public from further crimes of the defendant."

3

> Unusually Long Sentence.—If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

§ 1B1.13(b)(6). Thus, to qualify for a ULS reduction, a movant must show that:

(1) Their sentence is "unusually long;"

(2) They have served at least ten years of that sentence;

(3) The law has changed; and,

(4) As a result of that change, there would be a "gross disparity" between a sentence imposed today and their current sentence—after full consideration of the individualized circumstances.

While these elements are relatively straightforward, the "unusually long" element has been problematic. Previously, this Court analyzed the "unusually long" element and found that a sentence is "unusually long" when a movant's "sentence is 'unusually' longer than [the movant's] Guideline range at sentencing." *United States v. Wrice*, 2024 WL 3534856, *17–18 (S.D. Ill. July 25, 2024).

If a defendant satisfies all the elements for a ULS reduction, then a "change in the law . . . may be considered in determining whether the defendant presents an extraordinary and compelling reason" for compassionate release. *Id*.

If a defendant does *not* qualify, a change in law *cannot* be considered when evaluating whether the defendant presents "extraordinary and compelling reasons." However, if a defendant can show they qualify for compassionate release on *other* grounds, a change in law "may be

4

considered for purposes of determining the *extent*" of a reduction. USSG § 1B1.13(c) (emphasis added) (hereinafter "Limitation Provision").

Essentially, if a prisoner does not qualify for ULS, a change in law cannot be grounds for compassionate release—neither in whole nor in part. However, if a prisoner can establish other grounds for compassionate release, then a change in law can be considered in determining a new appropriate sentence.

Regardless, if a defendant proves "extraordinary and compelling reasons" exist for a reduction, the Court then considers the § 3553(a) factors in determining whether compassionate release is warranted. If the 3553(a) factors weigh against compassionate release, a court can deny the motion on those grounds.

### III. ANALYSIS

The Court will begin by examining whether Banks exhausted his administrative remedies prior to filing. The Court finds that Banks failed to exhaust his administrative remedies.

Banks has argued that he qualifies for compassionate release on two grounds: his advanced age and his alleged unusually long sentence. The Government does not dispute that Banks has made similar arguments concerning his age; rather, the Government argues that he has failed to exhaust his administrative remedies concerning his alleged unusually long sentence. The disagreement stems from one of the prerequisites for a ULS reduction—specifically the "change in law" element.

While Banks claims there was a change in law that satisfies the element for an unusually long sentence reduction in both his request to the warden and his motion before the Court, he points to different changes in law between his petition and his motion. Banks stated in his request to the warden that (1) the First Step Act lowered the mandatory minimums for drug

5

offenses, including his convictions, (2) that the Sentencing Commission promulgated new guidelines to make these changes retroactive, and (3) that he qualifies for the unusually long sentence provision of the new Guidelines. He wrote: "as applicable here, the USSG permits for the consideration of Compassionate Release if an inmate has served over 10 years and is serving a sentence that represents 'inequality' under the law." (Doc. 187, Attach. 2). He further wrote:

> It is well established that African-American males who were convicted and sentenced under disparate crack cocaine laws are serving sentences representing "inequality" [The Plaintiff] ask[s] that this fact be considered in [the Warden's] decision.

(*Id*.). In his request before the warden, Banks argued that recent changes in law were intended to correct a racial sentencing disparity—a disparity that he claims led to him receiving an unusually long sentence. He points to the *specific* change in law concerning cocaine offenses.

In contrast, in his motion before the Court, he does not mention a racial sentencing disparity as a result of cocaine and cocaine base sentencing differences. Instead, Banks writes:

> Illinois is no longer prosecuting marijuana possession crimes below 30 grams, and there would be no penalty for this type of possession . . . . [if Banks] were sentenced today, he would have received a significantly shorter sentence . . . because of changes in the arrest, indictment, and sentencing of marijuana and drug trafficking convictions in the past decade.

(*Id*. at Attach. 1). While Banks talks about general changes in drug trafficking laws, Banks *specifically* mentions changes in marijuana laws. Nowhere in Banks's petition to the warden did he mention changes in marijuana laws; thus, the warden was unable to review those claims.

The purpose of the exhaustion requirement is to allow the warden an opportunity to consider the grounds for a movant's release before involving the courts. Movants are not required to present identical petitions before the warden and the Court, but they must identify the same specific issues between the two. In the case of the ULS analysis, identifying whether there has been a change in law and that change's effects on sentencing is core to the analysis. As a

result, a movant must point to specific laws or changes for specific offenses to afford the warden an opportunity to investigate a movant's claims. Pointing to different or additional changes in law between the petition and the motion necessarily deprives the warden of the opportunity to investigate the movant's claims.

Here, because Banks points to new or alternative changes in law in his motion for compassionate release, the warden did not have the opportunity to review the specific issues he raised and, therefore, Banks has failed to exhaust his administrative remedies.

## IV.    CONCLUSION

Finding that Banks has failed to exhaust his administrative remedies, the Court **GRANTS** the Government's motion to dismiss and hereby **DENIES** Banks's motion for compassionate release. Banks may petition the warden and file a new motion after he has exhausted.

**IT IS SO ORDERED.**
**DATED:  January 10, 2025**

                                                        s/ J. Phil Gilbert
                                                        **J. PHIL GILBERT**
                                                        **DISTRICT JUDGE**